UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br>MN Airlines, LLC<br>dba Sun Country Airlines,<br>   Debtor. | Bky. Case No. 08-35197-RJK<br>Chapter 11 |
| In re:<br>MN Airline Holdings, Inc.,<br>   Debtor. | Bky. Case No. 08-35198-RJK<br>Chapter 11 |

**ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING ON AN INTERIM BASIS; AND (III) AUTHORIZING THE DEBTORS TO MAINTAIN A POST-PETITION LOAN AGREEMENT UNDER SEAL**

These case came on for hearing on the debtors' motion for order (I) Granting Expedited Relief; (II) Authorizing debtors to Obtain Post-Petition Financing on an Interim Basis; and (III) Authorizing the debtors to Maintain a Post-Petition loan agreement Under Seal (the "motion") filed by MN Airlines, LLC dba Sun Country Airlines and MN Airline Holdings, Inc. Appearances were noted in the record.

In the motion, the debtors seek (1) to obtain interim debtor-in-possession secured financing (the "Interim Facility") from Elite Landings, LLC (the "lender"), (2) authority to use the Interim Facility for the purposes set forth herein; (3) authority to grant lender, pursuant to section 364(c) of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), as security for the Interim Facility, security interests in and liens and mortgage interests upon all personal property

1280317v1

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/04/2008*
Lori Vosejpka, Clerk, by LMH

of the Debtor MN Airlines, LLC d/b/a Sun Country Airlines or the estate of Sun Country; and (4) authority to grant superpriority administrative expense status to lender with respect to the Interim Facility pursuant to section 364(c)(1) of the Bankruptcy Code.

Having reviewed and considered the motion, and having completed an interim hearing in accordance with section 364 of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules and Rule 4001-2 of the Local Rules, and good cause appearing,

THE COURT FINDS AND CONCLUDES THAT:

A. On October 6, 2008, the debtors each filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code They are continuing in possession of their property and are operating and managing their businesses as debtors-in-possession.

B. The lender is a debtor pursuant to a voluntary Chapter 11 petition filed in the District of Minnesota on October 9, 2008 and is a debtor-in-possession in Bankruptcy Case No. 08-45210. lender's Schedules list as an asset a $3 million claim against Sun Country ("lender's Pre-Petition claim"). debtors dispute this claim.

C. The lender is a wholly owned subsidiary of Petters Aviation, LLC ("Aviation"). Aviation owns approximately 80% of the capital of Holdings, which in turn owns 100% of the capital of Sun Country. According to Sun Country's bankruptcy schedules, Aviation has a claim of $15,145,133.00 against Sun Country (the "Aviation claim") and Petters Group Worldwide ("PGW") has a claim of $11,312,983.63 against Sun Country (the "PGW claim"). According to MN Airline Holdings' bankruptcy schedules, Aviation has a claim against it of $9,907,845.00.

D.	This court has jurisdiction to hear this motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(D), (K), (M), and (O).

E.	Notice of this order and the hearing to consider the motion, as set forth in the applicable certificates of service and as stated on the record, was adequate and sufficient under the circumstances pursuant to the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b)(1)(C), 4001(c)(1)(C), and the local rules of this court.  Under the circumstances, no further notice of the request for the relief granted herein is required.

F.	The debtors and the lender have, subject to this court's approval, entered into a Post-Petition loan and Security agreement (the "loan agreement") filed with the court at the hearing hereon (the "loan agreement").  The debtors seek approval of the loan agreement.

G.	Good cause has been shown for entry of this order.  The debtors have an immediate and critical need for the post-petition financing described in the motion to fund, among other things, the debtors' cash requirements, including without limitation, working capital, and fulfillment of certain aircraft lease obligations pursuant to general corporate needs as set forth in the Budget referred to in the loan agreement.  The debtors are unable to obtain adequate unsecured credit allowable under section 503 of the Bankruptcy Code as an administrative expense and the use of cash collateral alone would be insufficient to meet the debtors' immediate post-petition needs.  The debtors are unable to obtain other financing under section 364(c) of the Bankruptcy Code on equal or more favorable terms than that provided by the lender within the time required by their need to avoid immediate and irreparable harm.  A loan facility in the amount provided by the lender is unavailable to the debtors generally without their granting to

the lender, pursuant to sections 361, 364(c)(1), and 364(c)(2) of the Bankruptcy Code, the following:  (i) as security for all loans advanced by the lender to Sun Country pursuant to the loan agreement and the loan documents, and all obligations related thereto (collectively, the "Post-Petition Obligations"), a first-priority senior security interest in, and lien on, all of the debtors' unencumbered assets, including after-acquired assets and proceeds, and a junior lien on all encumbered assets and proceeds (the "Collateral"), but excluding, for the avoidance of doubt, any equipment leased to the debtors, debtors' rights under those lease, and deposits held by or for the benefit of debtors' creditors on the date of the motion as provided in paragraph 6 of this order; and (ii) a superpriority claim to the extent of the post-petition obligations pursuant to 11 U.S.C. § 364(c)(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  After considering all alternatives, the debtors have concluded in the exercise of their prudent business judgment that this loan facility represents the best working capital financing available to them.

H. The ability of the debtors to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the estates of the debtors and their creditors.  Absent entry of this order, the debtors' estates will be immediately and irreparably harmed.

I. The terms set forth in the loan agreement and this order have been negotiated in good faith and at arms length between the debtors and the lender.  Any loans extended and other financial accommodations made to the debtors by the lender pursuant to this order or the loan agreement on a post-petition basis shall have been

extended by the lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

J.  The terms set forth in the loan agreement and this order appear to be fair and reasonable, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

IT IS ORDERED:

1.  <u>Expedited Relief</u>.  The debtors' request for expedited relief is granted.

2.  <u>Approval of Post-Petition loan agreement</u>.  The debtors are authorized to obtain post-petition loans pursuant the terms of the loan agreement.  The terms and conditions of the loan agreement shall govern all advances made by the lender to Sun Country.  Sun Country shall not seek additional amounts from the lender in excess of those amounts necessary to pay the amounts set forth in the Budget except as otherwise provided for in the loan agreement.

3.  <u>Post-Petition Borrowing Authorization</u>.  Subject to the terms and conditions of this order, the debtors are authorized to enter into the loan agreement and are authorized to borrow from the lender sufficient funds for working capital and general corporate needs as set forth in the Budget or as contemplated by the loan agreement (the "DIP loan").

4.  <u>Interest and Fees</u>.  All interest accruing against the outstanding principal balance due under the loan agreement and all fees payable and cost and expenses (including but not limited to reasonable attorney's fees) reimbursable under the loan agreement which become due on a post-petition basis, and which shall include costs

incurred by the lender or Aviation in negotiating, documenting and maintaining the DIP loan, shall be paid at the time provided in and in accordance with the term and provision of the loan agreement and shall be considered part of the Post-Petition Obligations, without the necessity of the lender filing any further application with the court for any such fees or expenses.

5. <u>Power to Execute documents and Perform</u>. The debtors are authorized to enter into and deliver the loan agreement, as well as any notes, security agreements and other documents consistent with the terms and conditions of this order and the loan agreement that may be required by the lender (the "loan documents"). Any officers of the debtors are authorized to execute the loan agreement and any other loan documents to be executed by the debtors on behalf of the debtors and their bankruptcy estates. The debtors are also authorized and empowered (a) to perform all of their obligations under the loan agreement, the loan documents and any other attendant documents and such other agreements as may be required to give effect to the terms of the financing provided for in this order (collectively, the "DIP loan documents"), and (b) to perform and do all acts that may be required in connection with such documents and this order. The DIP loan documents and this order shall constitute valid and binding obligations of the debtors enforceable against them, and their successors and assigns, in accordance with its terms, subject to the terms of this order. The debtors, with the express written consent of the lender, may enter into any non-material amendments or modifications to the loan agreement or other documents without the need of further notice and hearing or order of this court; *provided*, that such modifications or amendments do not materially and adversely affect, in the reasonable view of the debtors, the rights of any creditor, equity holder or party in interest.

6. <u>Post-Petition Liens</u>.  As security for the Post-Petition Obligations, the debtors are authorized to grant to the lender, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, a first-priority security interest in and lien upon all of the Collateral including but not limited to accounts, inventory, deposit accounts, equipment, general intangibles, letter of credit rights, chattel paper, investment property and all other property as described in the loan agreement, including debtors' avoidance actions under sections 544 through 550 of the Bankruptcy Code, together with all substitutions, replacements and proceeds of the foregoing, other than debtors' interests in any of the following:  The debtor's interests, now owned or hereafter acquired, in (i) any aircraft equipment as that term is defined in section 1110(a)(3) of the United States Bankruptcy Code, (ii) any current or future lease or sublease of such aircraft equipment or any guaranty thereof, (iii) any rights, privileges or powers of debtors with respect to such aircraft equipment or leases, (iv) any security deposits or maintenance reserves, or any similar deposits or cash, held in connection with any of such aircraft equipment or leases, or (v) any substitutions, replacements, products, proceeds, insurance proceeds or accessions of or to any of such aircraft equipment or leases. lender's security interest shall be subject to Permitted Liens, as defined in the loan documents.  All liens and security interests discussed herein shall not (a) be subject to any lien or security interest that is avoided and preserved for the benefit of the debtors' estates under section 551 of the Bankruptcy Code, or (b) hereafter be subordinated to or made *pari pasu* with any other lien or security interest under section 364(d) of the Bankruptcy Code.

7. <u>Additional Perfection Measures</u>.  The liens and priority granted to the lender pursuant to this order and the DIP loan documents with respect to property of the debtors' estates shall be perfected by operation of law upon entry of this order by the

court.  The lender shall not be required to enter into or to obtain landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to file or record financing statements, mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent Office, Copyright Office or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the security interest and lien granted to the lender pursuant to this order.  If the lender, in its sole discretion, chooses to obtain consents from any licensor or similarly situated party in interest, to file financing statements, mortgages, notices of lien or similar instruments, or to otherwise confirm perfection of such security interests and liens:  (i) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim order; and (ii) no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.  In lieu of obtaining such consents or filing such financing statements, mortgages, notices of lien or similar instruments, the lender may, at its sole discretion, choose to file a true and complete copy of this order in any place at which any such instruments would or could be filed, together with a description of collateral located within the geographic area covered by such place of filing, and such filing by the lender shall have the same effect as if such financing statements, mortgages, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this order.

8. <u>superpriority claim</u>.  For all of the Post-Petition Obligations, the lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "superpriority claim") having priority over any and all

administrative expenses of the kinds specified in or arising or ordered under sections 503(b) and 507(b) of the Bankruptcy Code.

9. <u>Limitation on Surcharge</u>.  The Collateral shall not be subject to surcharge, pursuant to sections 506(c) or 105(a) of the Bankruptcy Code or otherwise, by the debtors or any other party in interest, without the prior written consent of the lender, and no consent to a charge against the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code shall be implied from any action, inaction, or acquiescence by the lender in these cases, including but not limited to funding of the debtors' ongoing operations by the lender.  In no event shall the lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

10. <u>Carve Out for Certain Costs</u>.  The Collateral shall be available for the payment of (a) U.S. Trustee fees owing by the Estates, and (b) allowed fees, costs and expenses of professionals retained by debtors and Committee of Unsecured Creditors not otherwise paid during the case (the "Professional Fees and Expenses") only to the extent that such Professional Fees and Expenses (i) were incurred or accrued prior to the earlier of (x) the DIP Maturity date, (y) dismissal or conversion of this Case, or (z) receipt by the debtors of a notice of an Event of Default, and (ii) do not exceed an aggregate amount of $500,000, to be paid pro-rata among such professionals, minus the amounts of any retainers (as used in this paragraph, the "Carve Out").  Notwithstanding the forgoing, amounts paid from the Carve Out and proceeds of the DIP loan authorized herein shall not be used for the payment or reimbursement of, any fees or disbursements of the debtors or any committee or trustee appointed in the Case incurred in connection with the investigation, assertion of, prosecution of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or

other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (a) seeking relief against the lender for claims under Chapter 5 of the Bankruptcy Code or similar non-bankruptcy law relief; and (b) seeking to reduce the lender's claims in the Case or challenging the amount, extent, validity, enforceability, priority or perfection of the lender's claims or liens supporting such claims. The Carve Out shall only be paid from the Collateral to the extent that there are insufficient funds for payment of such Professional Fees and Expenses from any asset unencumbered by lender's liens. Any Carve Out used to pay Professional Fees and Expenses shall constitute additional Post-Petition Obligations owed to the lender under the DIP loan documents and this order.

11. <u>Events of Default</u>. Except as expressly provided herein, any Default or Event of Default under the loan agreement shall constitute a Default or Event of Default, as the case may be, under this order. In addition to the Events of Default under the loan agreement, the following shall constitute further Events of Default under this order:

    a. Either of the debtors fails to comply with a term of this order.

    b. This order does not become a final order for any reason within thirty calendar days of this order.

    c. Commencement of any action or the filing of any pleading by any party in interest materially challenging the validity or priority of the liens granted herein or of the validity, priority, perfection, of the lender's liens in the Collateral.

    d. Conversion to Chapter 7, appointment of a Chapter 11 trustee, or appointment of an examiner with expanded powers in the case of either Debtor.

    f. Any party in interest obtains an order from the Bankruptcy court granting it relief from the automatic stay with respect to any of the Collateral.

g. Any party in interest files a competing Chapter 11 plan that does not provide for payment of the DIP loan in full and in accordance with the loan documents.

12. <u>Effect of Event of Default</u>. Immediately upon the occurrence of any Event of Default (as defined in this order), the lender shall, in its discretion, cease to make any additional DIP loan advances under the DIP loan documents. Upon such an Event of Default, the lender shall be entitled to a Bankruptcy court hearing upon three (3) business days' notice to the debtors, the Committee of Unsecured Creditors and the United States Trustee, to request the lifting of the automatic stay, and only defense the debtors may assert is that no such Event of Default has occurred, or that the default has been cured. Immediately upon lifting of the automatic stay, the lender and any assignee shall be entitled to commence any and all action to collect the Post-Petition Obligations and to exercise all of their rights and remedies with respect to the Collateral provided under the DIP loan documents and this order including, but not limited to, sending notice to account debtors, taking possession of any Collateral and disposing of the Collateral as provided by the DIP loan documents and/or applicable law, and applying all proceeds from the Collateral against any of the Post-Petition Obligations in such order as the lender may elect.

13. <u>Binding order</u>. This order and the loan agreement shall be binding upon the lender, the debtors and their respective successors and assigns (including any trustee hereafter appointed or elected for the debtors) and shall inure to the benefit of the lender and the debtors and (except with respect to any trustee appointed or elected for the debtors) their respective successors and assigns. The provisions of this order, including the grant of claims and liens to the lender, and any actions taken pursuant

hereto shall survive the entry of any order converting this case to a case under Chapter 7 of the Bankruptcy Code.

14. <u>Causes of Action Waived by debtors</u>.  The debtors and the Committee of Unsecured Creditors are  deemed to have waived, as of the filing date, the right to (i) challenge (a) the amount, extent, validity, perfection, priority, and enforceability of any lien in favor of the lender, (b)  the Aviation claim and the first $5,660,000 of the PGW claim, or take any action to recharacterize, subordinate or otherwise cause the Aviation claim or the first $5,660,000 of the PGW claim to be treated other than as a general unsecured claim, and (c) take any action to recharacterize, subordinate or otherwise cause the allowed amount of the lender's Pre-Petition claim to be treated other than as a general unsecured claim, and (ii) assert defenses, counterclaims or setoffs with respect to any of such liens or the Aviation claim and the PGW claim except to the extent the PGW claim exceeds $5,660,000.  The debtors and the Committee of Unsecured Creditors shall not assist, endorse, encourage or facilitate other parties in the pursuit of any of the causes of action waived by them herein.  The waivers contained in this paragraph 14 apply only to the specified lender, Aviation and PGW claims and expressly do not apply to any other claims asserted or to be asserted in these cases.

15. <u>Challenge to lender's Rights</u>.  The provisions of paragraph 14 above and the findings contained in the recital paragraphs of this order shall be binding upon all parties in interest, other than those identified in paragraph 14, unless a party in interest has properly filed an adversary proceeding or commenced a contested matter on behalf of the debtors' estates no later than the date that is sixty days after the appointment of a committee of unsecured creditors, challenging the amount, validity, enforceability,

perfection, or priority of the Pre-Petition Obligations, or otherwise asserting any claims or causes of action against the lender or Aviation relating thereto, and the court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If any such adversary proceeding is commenced the provisions of paragraph 14 and the findings contained in the recital paragraphs of this order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in the adversary complaint.

16. <u>Effect of Any Subsequent Modification, Amendment or Vacation of this order</u>. In accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this order or the DIP loan documents are hereafter modified, amended or vacated by a subsequent order of this or any other court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created or t or any obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any obligations incurred and any claim granted to the lender hereunder or under the DIP loan documents arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this order and the DIP loan documents, and the lender shall be entitled to all of the rights, remedies, privileges and benefits, including the lien and priorities granted herein and therein, with respect to any such obligations and claim.

17. <u>No Responsible Person</u>. By providing the DIP loan and extending other financial accommodations to the debtors under this order or taking any actions pursuant

to this order, including, without limitation, action to collect the indebtedness and obligations of the debtors, the lender shall not (a) be deemed to be in control of the operations or liquidation of the debtors or (b) to be acting as a responsible person or owner or operator with respect to the operation, management, or liquidation of the debtors (including as such or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any other federal or state statute).

18. Releases. In consideration for the DIP loan, the debtors on behalf of themselves and their successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of parties in interest to asset claims on behalf of the debtors' estates (subject to Paragraph 14 above) shall forever release, discharge and acquit the lender and its officers, directors, employees, agents, attorneys and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this order is entered with respect to the debtors, the Pre-Petition Indebtedness and the Collateral.

19. Enabling Clause. The debtors are authorized to perform all acts, to make, execute and deliver all instruments and documents and to pay fees and all other amounts which may be required or which may be deemed reasonably necessary by the lender to effectuate the terms and conditions of this order and the DIP loan documents including, without limitation, the execution and delivery of any appropriate amendment to the loan agreement.

20. <u>Preliminary Order</u>. This order shall continue to be effective until entry of a final order following the conclusion of the final hearing on the motion, currently scheduled for December 17, 2008.

21. The debtors are authorized to file the loan agreement and any other post-petition loan documents under seal pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

22. Notwithstanding the possible applicability of any provision of the Bankruptcy Rules, Bankruptcy Code or otherwise, this order is effective immediately.

Dated: December 4, 2008

/e/ Robert J. Kressel
Robert J. Kressel
United States Bankruptcy Judge